IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **RUFUS ENGLISH,** ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACTION 05-0312-WS-B |
| ) | |
| **CSA EQUIPMENT COMPANY LLC,** ) | |
| *et al.*, ) | |
| ) | |
| Defendants. ) | |

**ORDER**

This matter is before the Court on plaintiff's Motion to Supplement or Amend the Complaint (doc. 31). The Motion has been briefed and is ripe for disposition at this time.

**I.   Background.**

On May 27, 2005, plaintiff Rufus English ("English"), by and through counsel, filed an 18-page, 75-paragraph Complaint (doc. 1) against defendants CSA Equipment Company LLC ("CSA") and ILA Local 1459 ("ILA") (collectively, "Defendants"). The Complaint enumerated four causes of action, including a claim of race discrimination pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e *et seq.*; a race discrimination claim under 42 U.S.C. § 1981; an age discrimination claim pursuant to the Age Discrimination in Employment Act, 29 U.S.C. §§ 621 *et seq.*; and a state-law claim for emotional distress.[1] The factual underpinnings of these claims lie, *inter alia*, in English's contentions that he was furloughed from his job on January 4, 2002, that a white co-worker with less seniority was rehired immediately while English was not, and that CSA wrongfully failed to rehire him when two Regular Clerk positions became available in March 2004. English maintains that

---

[1] Plaintiff's counsel represents that he made a "strategic decision" not to plead causes of action for breach of the Collective Bargaining Agreement or violation of the National Labor Relations Act in the original Complaint because "insufficient information existed" and, at any rate, "any 'duty of fair representation' claim was probably barred by a 6 month statute of limitation[s]." (Motion, at 2.)

Defendants' alleged course of conduct was motivated by discriminatory animus concerning his race (African-American) and age (60 at the time of filing the Complaint).

On August 25, 2005, then-Magistrate Judge DuBose entered a Rule 16(b) Scheduling Order (doc. 14) providing, in pertinent part, that "[a]ny motion for leave to amend the pleadings or to join other parties must be filed on or before November 7, 2005." (Doc. 14, ¶ 5.)  Plaintiff's counsel did not object to this deadline, which conformed to the cutoff date requested by the parties via their Report of Parties' Planning Meeting (doc. 12).  At no time prior to November 7, 2005 did plaintiff seek enlargement of that deadline or indicate that additional discovery efforts were necessary before he could finally determine whether amendments to his pleading might be warranted.

On January 24, 2006, some 78 days after the applicable Scheduling Order deadline had lapsed, plaintiff filed a Motion to Supplement or Amend the Complaint (doc. 31), seeking to interpose new causes of action for violation of the National Labor Relations Act, 29 U.S.C. §§ 157 and 158 ("NLRA"), and breach of the Collective Bargaining Agreement ("CBA") between CSA and ILA.[2]  In particular, a proposed Paragraph 78 of the Complaint alleges that Defendants violated the CBA and "the National Labor law" in no fewer than 10 respects, including: (i) discharging English and two less senior employees in January 2002,[3] then immediately rehiring the least senior of the three (John Hayes) in a "rouge [*sic*]" to evade CBA seniority requirements; (ii) rehiring Hayes without Union approval; (iii) hiring Jones Franklin over English in June

---

[2] The Court's task in considering the proposed amendment has been hindered by the vagueness with which that amendment is pleaded.  Although rich in factual detail, the 10-page proposed amendment only hints at the legal theories animating the newly asserted Count Five.  That cause of action is enigmatically labeled "Collective Bargaining Agreement," quotes large chunks of §§ 7 and 8 of the NLRA, and is silent as to which form of claim is asserted against which defendant.  At most, the Court gathers from the proposed pleading that English would charge both Defendants with breaching the CBA and engaging in sundry unfair labor practices.  Any other nuance to plaintiff's proposed Count Five has been camouflaged by the impenetrable manner in which the claim was pleaded.

[3] Paragraph 78(a) of the proposed amendment alleges that the date of this discharge was "January 4, 2004." (*Id.*)  That date is apparently a typographical error, inasmuch as Paragraphs 36(j) and 36(n) fix the date of these events as January 4, 2002.

2002; (iv) planning to hire Gerry Gibbons[4] whenever a Company Clerk position became available, without regard to seniority and qualifications; (v) ILA engaging in a "scheme" to reduce the applicant pool for Company Clerk positions to improve Gibbons' odds of hire; (vi) ILA recommending an applicant for hire; (vii) CSA disqualifying an applicant so that Gibbons could be hired; (viii) "discriminatorily hiring Mr. Gibbons over Mr. English" despite the latter's superior qualifications; (ix) arbitrarily and capriciously hiring Gibbons over English despite the latter's superior qualifications; and (x) selecting "grievance members who was [*sic*] biased and incapable of reaching a fair decision." (Proposed Amendment (doc. 31), ¶ 78.) Plaintiff explains that these causes of action are "newly discovered claims," that the discovery process illuminated these claims, and that they "became more transparent" after a spate of depositions taken in mid-January 2006. (Motion, at 2.) Defendants have filed separate memoranda of law (docs. 34, 35) and exhibits in opposition to the Motion, and plaintiff has submitted a reply brief (doc. 36), including extensive evidentiary submissions, in support of his position.[5]

## II.     Rule 16(b) Analysis.

### A.     *Legal Standard.*

The parties' briefs focus almost exclusively on the liberal amendment standard of Rule 15, Fed.R.Civ.P. In so doing, they overlook the key threshold issue of whether the Motion can

---

[4] Plaintiff's filings interchangeably refer to this individual as "Gibbons" and "Givens". (*Compare* doc. 31, ¶ 36(v) *et seq. with* doc. 36, at 10-11.) The Court has no idea which is correct. For consistency's sake, this Order will use "Gibbons."

[5] Three technical defects plague the reply brief. First, plaintiff's 19-page submission is in derogation of Local Rule 7.1(b), which provides that "[a] reply brief by movant shall not exceed fifteen (15) pages in length." *Id.* Plaintiff's counsel neither requested leave to exceed that limitation, nor did he explain why he could not effectively rebut defendants' arguments within the allotted limit. Second, the nearly 100 pages of deposition excerpts accompanying the reply brief are not copies of pages from the official transcript, but are instead evidently pasted from a diskette copy into a word processor. Third, much of what plaintiff has chosen to submit is of negligible benefit in determining the propriety of the requested amendment, but merely serves to clutter the court file with discovery materials that have no more than a tangential bearing on the matter at hand, in contravention of Local Rule 5.5(c)'s directive that, "[i]f discovery materials are germane to any motion or response, only the relevant portions of the material shall be filed ...." *Id.* Notwithstanding these shortcomings, the Court in its discretion will consider the reply brief and attachments as filed.

withstand scrutiny under Rule 16(b), which forbids modification of a scheduling order absent a showing of "good cause."  Under the law of this Circuit, the Rule 16 hurdle must be surmounted before the Rule 15 question may be considered.  *See Sosa v. Airprint Systems, Inc.*, 133 F.3d 1417, 1419 (11th Cir. 1998) ("because Sosa's motion to amend was filed after the scheduling order's deadline, she must first demonstrate good cause under Rule 16(b) before we will consider whether amendment is proper under Rule 15(a)"); *Alexander v. AOL Time Warner, Inc.*, 2005 WL 1182950, *1 (11th Cir. May 19, 2005) (when granting leave to amend a complaint "would require modifying a Rule 16 scheduling order, the movant must first show good cause").[6] The deadlines set forth in Rule 16(b) scheduling orders are firm settings that must be taken seriously by both the Court and the litigants appearing before it.  To allow parties to circumvent those long-expired deadlines merely by invoking the liberal leave to amend policy espoused by Rule 15(a) would be to "render scheduling orders meaningless and effectively ... read Rule 16(b) and its good cause requirement out of the Federal Rules of Civil Procedure." *Sosa*, 133 F.3d at 1419.  The Court will not trivialize the Scheduling Order in such a manner.  Thus, extension of those deadlines is not automatic, and plaintiff's request is not a mere formality to be rubber-stamped without scrutiny.

Plaintiff's late-filed proposed amendment is not permissible unless it comports with Rule 16(b)'s directive that modifications to a pretrial scheduling order may be made only "upon a showing of good cause."  *Id.*  Interpreting this standard, the Eleventh Circuit has explained that it "precludes modification unless the schedule cannot be met despite the diligence of the party seeking the extension."  *Sosa*, 133 F.3d at 1418; *see also Argo Systems FZE v. Liberty Ins. PTE, Ltd.*, 2005 WL 1355060, *5-6 (S.D. Ala. June 7, 2005) (explaining that Rule 16(b) good cause

---

[6] *See also Morrison v. Exxonmobil Corp.*, 2006 WL 42142, *3 (M.D. Ga. Jan. 6, 2006) ("When a motion to amend is filed after a scheduling order deadline, as is the case here, Rule 16 is the proper guide for determining whether a party's delay may be excused."); *Richardson v. Georgia Pacific Corp.*, 2005 WL 1278833, *1 (S.D. Ala. May 26, 2005) ("A motion for leave to amend filed after the deadline for amending pleadings set forth in the scheduling order is governed by the stricter standard for amendment set forth in Rule 16(b) rather than the liberal amendment standard set out in Federal Rule of Civil Procedure 15(a)."); *Nobles v. Rural Community Ins. Services*, 303 F. Supp.2d 1279, 1283 (M.D. Ala. 2004) ("It is only after the court addresses whether the proposed amendment may be granted under Rule 16 that the court is to determine whether it is proper under Rule 15.").

standard precludes modification of scheduling order unless existing schedule cannot be met despite movant's diligence); *Williams v. Baldwin County Comm'n*, 203 F.R.D. 512, 516-17 (S.D. Ala. 2001) (denying extension where plaintiff's counsel was inattentive to scheduling order). Therefore, the touchstone of the Rule 16(b) inquiry is whether English exercised diligence in pleading potential claims against Defendants. The Court answers this question in the negative.

### B.     *Application of Legal Standard to Proposed Claims.*

#### 1.     *Plaintiff Was Not Reasonably Diligent in Pleading Count Five.*

The alleged violations of the CBA and "the National Labor law" that English identifies in his proposed Count Five may be grouped into the following categories: (a) the discharge of English and Hayes in January 2002, and Hayes' subsequent rehire; (b) the selection of Franklin over English in June 2002; (c) Defendants' chicanery in hiring Gibbons over English; and (d) the biased grievance committee. Yet the initial Complaint, filed eight months before the Amendment, includes many of these allegations already. For example, Paragraph 17 of the Complaint alleges that English and two other clerks were furloughed in January 2002, and that Hayes was promptly rehired despite having less seniority than plaintiff.[7] If English knew these facts in May 2005, why could he not have pleaded Count Five claims predicated on those facts at that time? Likewise, Paragraph 29 of the Complaint alleges that Gibbons was hired for a Regular Clerk position despite being less senior than English. Again, given English's

---

[7]     English maintains that his proposed Count Five is motivated in part by his assessment "that the layoff and rehire scheme was an attempt to circumvent the CBA's last in, first out requirements." (Reply, at 3.) But he offers no reason why he could not have made that assessment before filing the initial Complaint, wherein he lodged specific allegations about that very "layoff and rehire scheme." Plaintiff does not suggest that he was unaware of the disparities in seniority between himself and Hayes, or that he was ignorant of the CBA's purported "last in, first out requirements" until conducting substantial discovery in this litigation. Additionally, English contends that part of the justification for Count Five is that he learned in discovery that CSA violated the CBA by rehiring Hayes without union consent. (*Id.*) But English then cites deposition testimony from the Union President, Mike Bowden, that he did consent to such rehire on behalf of the Union. (*Id.* at 8-9.) Thus, plaintiff points to discovery conflicting with allegations in his proposed Count Five; surely, he did not need to take such discovery before pleading facts that controvert it. The Court understands that English disputes Bowden's authority to provide such consent, but English offers no reason why he could not have known of or had reason to believe that objection contemporaneously with filing the original Complaint.

knowledge in May 2005 that Gibbons was hired in his stead despite being less qualified, there is no apparent reason why he could not have pleaded that the hiring decision violated the CBA and the NLRA.[8]  The Complaint accuses Defendants of having "promoted a policy of racial exclusion," in contravention of the terms of the CBA.  (Complaint, ¶ 35.)  It charges ILA with "selectively listing names to be forwarded to Defendant CSA" for hiring purposes in a racially discriminatory manner, such that the union was complicit in the employer's wrongful decisions.  (*Id.*, ¶ 37.)  It contends that the union's listing practice also effects age discrimination against older workers, inasmuch as Defendants "have conspired to deprive Mr. English from [*sic*] employment opportunities."  (*Id.*, ¶ 59.)  Yet plaintiff has waited until now to allege that such policies and practices violate the CBA and the NLRA.

Clearly, English could have pleaded his CBA and NLRA claims against Defendants well in advance of his January 2006 proposed amendment.  This conclusion is reinforced by several documents submitted by Defendants.  A sharply-worded letter by English to ILA representatives dated April 12, 2004 purported to initiate a grievance over the hiring of a less senior white applicant (presumably Gibbons) for the Company Clerk job.  (*See* doc. 34, at Exh. 1.)  English's grievance letter alleged "that sections of our contract and rules has [*sic*] been violated continuously by [ILA] and [CSA]"; that the hiring of less senior white clerks "violates Section 7 of the Working Agreement (Contract)"; that the failure to maintain a recent seniority list/roster approved by both Defendants "is a violation of Section 8 of the Working Agreement"; that Defendants "have violated section 15 of the working agreement continuously";[9] and that his

---

[8]  English points to facts elicited in discovery that Gibbons had less seniority than any other applicants, that the union recommended Gibbons for the position, that the CBA did not allow Gibbons to be hired for that position unless its incumbent had been removed for cause, and that the incumbent was in fact removed for cause.  (Reply, at 10-11.)  Plaintiff unquestionably knew of the seniority disparity when he filed his Complaint.  The additional facts cited by plaintiff may (or may not) bolster Count Five, but plaintiff certainly could have pleaded Count Five without the benefit of such facts.

[9]  Section 15 is, apparently, the provision of the CBA barring discrimination on the basis of race, age or other class status.  The entire thrust of the initial Complaint is that Defendants conspired in discriminatory behavior that would violate Section 15.  It is therefore a mystery why plaintiff waited to plead a violation of that CBA provision until submitting his proposed Amended Complaint.

seniority had been diluted or changed. (*Id.*) Other exhibits reflect that English filed the following unfair labor practice charges against Defendants with the National Labor Relations Board: (a) a charge dated June 25, 2004, accusing ILA of violating the NLRA by failing to represent him "in a grievance concerning the company's selection of a less senior person for work" (doc. 34, Exh. 2); (b) a charge dated October 5, 2004 alleging that CSA violated the NLRA by denying English a company clerk position and allowing its supervisor to serve as a union official and grievance committee member (*Id.*); and (c) another charge dated October 5, 2004 alleging that ILA violated the NLRA by allowing a company supervisor to serve as a union official and grievance committee member (*Id.*).[10]

Considered fairly then, the record shows that plaintiff was well aware of the claims subsumed in Count Five at the time he filed his original Complaint. By failing to include those claims in the initial Complaint, and by delaying some eight months after initiating this lawsuit before requesting leave to inject such claims into these proceedings, English did not exercise the diligence required by Rule 16(b).

> 2.  *Plaintiff's Counterarguments are not Persuasive.*

Plaintiff attempts to establish diligence by arguing that facts gleaned from the discovery process were essential to his decision to plead Count Five. The Court has no doubt that plaintiff learned facts in discovery that strengthened his impressions about these claims. For example, plaintiff indicates that he learned through discovery "who were involved in the decision making process, how the process functioned, and what facts justified ...decisions adverse to Mr. English." (Motion, at 2.) But knowledge of those facts was not a necessary precursor to plaintiff's ability to plead Count Five. The original Complaint is chock full of allegations that

---

[10] Part of the proposed Count Five alleges violations of the CBA and NLRA predicated on the selection of grievance committee members who were "biased and incapable of reaching a fair decision." (Proposed Amendment, ¶ 78(j).) Given that he had previously filed unfair labor practice charges challenging the composition of the grievance committee, English cannot credibly deny knowledge of this objection when he filed his Complaint. To be sure, English may have learned more facts about alleged grievance committee biases during the discovery process. But he plainly had sufficient information to articulate the claim as of the filing of the original Complaint. His failure to do so reflects a lack of the diligence required by Rule 16(b).

CSA and ILA conspired together to deprive English of employment, even though at the time of filing he presumably lacked those same details of who was involved in the decision making process, how the process functioned, and what facts justified those decisions.  To accept plaintiff's rationale would be to determine that English needed details about the adverse decisions to allege breaches of the CBA and NLRA, but not to allege that (a) those same decisions were unlawfully discriminatory on the basis of his race and age and (b) those decisions were the product of a conspiracy by CSA and ILA to exclude him from employment.  Such a finding would be internally contradictory and nonsensical.

Equally unavailing is English's protestation that Count Five is needed "to attach claims that he either didn't know that he had, or could not prove at the time that he filed his initial complaint," and that  "[t]he rules of pleading constrained him from bringing actions based on instinct or surmise."  (Reply Brief (doc. 36), at 2, 12.)  The rules of pleading do not prohibit a plaintiff from bringing claims based on information and belief.  English did just that in bringing race and age discrimination claims against Defendants.  Besides, English plainly knew he had claims relating to alleged violations of the CBA and NLRA well before he filed his Complaint, as evidenced by his multiple unfair labor practice charges and his stern April 2004 letter delineating multiple specific alleged breaches of the CBA by Defendants.[11]  That he might not have been able to prove those claims at the time he filed his Complaint did not preclude him from raising such claims; indeed, it is the rare plaintiff who can "prove" his claims in their entirety when his initial pleading is filed.  That reality is one of the primary purposes for the discovery process, wherein a plaintiff may collect the necessary evidence within defendants' purview to prove his claim.

English next suggests that he would have risked Rule 11 sanctions by pleading Count

---

[11]  Plaintiff balks that, of the claims identified in the April 2004 letter, "[n]one ... are included in the proposed amendment."  (Reply, at 13-14.)  This statement is patently incorrect.  Like the April 2004 letter, the proposed Amended Complaint is motivated in large part by seniority-based objections.  Like the April 2004 letter, the proposed Amended Complaint alleges discrimination in violation of the CBA.  Similarly meritless is plaintiff's contention that his unfair labor practice charges are distinguishable from his proposed Count Five because the former "challenged only one member of the Grievance Committee," while the latter challenges all of them.  (Reply Brief, at 14.)  Such a contention fails on its face.

Five without first gathering facts to prove those claims. *But see Anderson v. Smithfield Foods, Inc.*, 353 F.3d 912, 915 (11th Cir. 2003) (district court has discretion to award Rule 11 sanctions only "(1) when a party files a pleading that has no reasonable factual basis; (2) when the party files a pleading that is based on a legal theory that has no reasonable chance of success and that cannot be advanced as a reasonable argument to change existing law; or (3) when the party files a pleading in bad faith for an improper purpose"); *Massengale v. Ray*, 267 F.3d 1298, 1301 (11th Cir. 2001) (similar). The Rule 11 test hinges on the reasonableness of counsel's factual inquiry, which in turn depends on such factors as how much time for investigation was available and whether he had to rely on his client for information. *See Worldwide Primates, Inc. v. McGreal*, 87 F.3d 1252, 1254 (11th Cir. 1996) (outlining standard); *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 401-02, 110 S.Ct. 2447, 110 L.Ed.2d 359 (1990) ("An inquiry that is unreasonable when an attorney has months to prepare a complaint may be reasonable when he has only a few days before the statute of limitations runs."). Here plaintiff's counsel states that he was retained by plaintiff just two days before the Complaint was filed, and that time was of the essence because of the imminent Title VII limitations deadline. (*See* Motion, at 1-2.) Plaintiff's counsel further suggests that details about Defendants' decision making processes were held in their exclusive domain. (*See* Reply, at 2.) Under the circumstances, counsel could not reasonably have believed that it would violate Rule 11 to raise the CBA and NLRA claims prior to vetting them thoroughly via the discovery process. *Cf. Baker v. Alderman*, 158 F.3d 516, 524 (11th Cir. 1998) (Rule 11 sanctions are warranted where plaintiffs exhibit deliberate indifference to obvious facts, not where plaintiff's evidence is merely weak). The Advisory Committee Notes accompanying the 1993 amendments to Rule 11 specifically recognize "that sometimes a litigant may have good reason to believe that a fact is true or false but may need discovery, formal or informal, from opposing parties or third persons to gather and confirm the evidentiary basis for the allegation." *Id.* Simply put, plaintiff's counsel was no more at risk of incurring Rule 11 sanctions for Count Five on the ground of insufficient factual basis than he was for any of the other causes of action articulated in the Complaint. A groundless fear of such sanctions cannot excuse plaintiff's lack of diligence in pleading Count Five.

### III.    Conclusion.

Plaintiff's proposed amendment was filed more than two months after the deadline set

forth in the applicable Scheduling Order. To establish good cause for this delay, plaintiff insists that "it was only through discovery that Mr. English learned the full extent of how his rights ... had been trampled upon." (Reply, at 14.) But the rules of pleading neither require plaintiffs to forestall pleading causes of action, nor afford them the luxury of waiting to plead such causes of action, until such time as they have "learned the full extent" of any wrongs. After careful scrutiny of the pleadings and the discovery materials submitted by the parties, the undersigned is convinced that English was aware of and could have pleaded the claims subsumed in Count Five, in good faith and without any legitimate fear of sanctions for factual deficiencies, as part of the initial Complaint. His failure to do so until eight months later constitutes a lack of reasonable diligence. Accordingly, plaintiff has failed to show good cause for modification of the Rule 16(b) Scheduling Order, and such modification is inappropriate. The Motion for Leave to Amend is **denied** as untimely and noncompliant with the Scheduling Order.[12]

---

[12] In so finding, the undersigned does not have occasion to rule on Defendants' arguments that the proposed amendment is futile under Rule 15(a), Fed.R.Civ.P., because plaintiff's claims against ILA for breach of the CBA are subject to a six-month limitations period. Where an employee brings a hybrid § 301 / fair representation claim against both an employer and a union, alleging that the employer breached a collective bargaining agreement and that the union breached its duty of fair representation, the combined cause of action is governed by a six-month limitation period borrowed from § 10(b) of the NLRA. *See, e.g., Coppage v. U.S. Postal Service*, 281 F.3d 1200, 1204 (11th Cir. 2002). But English never frames Count Five as such a hybrid claim, nor does he posture his claims against ILA as arising from breach of its duty of fair representation. *See Sams v. United Food & Commercial Workers Int'l Union, AFL-CIO*, 866 F.2d 1380, 1385 (11th Cir. 1989) ("what the plaintiff says his case is after limitations have been asserted as a problem, may not be decisive, but how he pleads it or did plead it very much is"). Although obscured by the amendment's decidedly murky legal underpinnings and amorphous structure, the proposed Count Five may allege that ILA breached contractual obligations under the CBA, as to which English was a third-party beneficiary. In that event, plaintiff's resulting Section 301 claim for breach of contract would be governed by Alabama's six-year statute of limitations for contract claims, not § 10(b)'s six-month period, and therefore would be timely. *See Hechler v. Intern. Broth. of Elec. Workers*, 834 F.2d 942, 946 (11th Cir. 1987). To resolve this issue, the Court would have had to undertake the following analysis: "If Plaintiff's § 301 claims are based only on contractual duties, and are not dependent on federal labor law, then they are governed by the state statute of limitations. If, on the other hand, Plaintiff's claims depend on showing that the Union breached its federally-imposed duty of fair representation, then the applicable statute of limitations is that provided in § 10(b)." *Davis v. Asti, Inc.*, 180 F. Supp.2d 1314, 1319 (S.D. Fla. 2001). ILA's submission unhelpfully assumed that Count Five is a hybrid claim. Absent some basis for that assumption, the breach of

DONE and ORDERED this 16th day of February, 2006.

                                                    s/ WILLIAM H. STEELE
                                                    UNITED STATES DISTRICT JUDGE

---

CBA claims against ILA were neither untimely nor futile.  That said, other aspects of the proposed Count Five clearly would have flunked a futility inquiry.  If, as English insists, he is not bringing a duty of fair representation claim against ILA, then his claims against CSA for breach of the CBA are barred because such claims are cognizable against an employer only if the union breached its duty of fair representation.  *See DelCostello v. Int'l Broth. of Teamsters*, 462 U.S. 151, 163-64, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983); *Parker v. Connors Steel Co.*, 855 F.2d 1510, 1521-22 (11th Cir. 1988); *Davis*, 180 F. Supp.2d at 1318.  Similarly, to the extent that the proposed Count Five would allege unfair labor practices in violation of the NLRA, it is futile because federal courts are not empowered to decide what is or is not an unfair labor practice under §§ 7 and 8 of the NLRA.  *See Kaiser Steel Corp. v. Mullins*, 455 U.S. 72, 83, 102 S.Ct. 851, 70 L.Ed.2d 833 (1982) (explaining that NLRB has primary jurisdiction to determine unfair labor practices, and that federal courts generally "do not have jurisdiction over activity which is arguably subject to § 7 or § 8 of the" NLRA); *Taylor v. N.L.R.B.*, 786 F.2d 1516, 1520 (11th Cir. 1986) ("the NLRB has a statutory duty to enforce the National Labor Relations Act and exclusive jurisdiction to decide unfair labor practices"); *Bova v. Pipefitters and Plumbers Local 60, AFL-CIO*, 554 F.2d 226, 228 (5th Cir. 1977) ("Of course, any claim by Bova that he has been the victim of an unfair labor practice must be submitted to the National Labor Relations Board, not the district court, absent certain exceptions not applicable here.").  Thus, a Rule 15(a) futility analysis would have barred some, but likely not all, claims subsumed in the proposed Count Five.